UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

DERIS DELINORE SOLOMON,

        Plaintiff,                       Case No. 2:13-cv-66

v.                                       Honorable Gordon J. Quist

TERESA KOTSCH, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Deris Delinore Solomon, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Teresa Kotsch, Resident Unit Manager Marquita Malette, Deputy Warden Kathy Olson, Warden Duncan MacLaren, and MDOC Director Daniel Heyns. Plaintiff alleges that during the pertinent time period, he was 53 years old and had been taking Doxazosin as treatment for benign prostatic hyperplasia, which caused difficulty urinating, painful urination, and urinary frequency and urgency. Plaintiff states that on October 28, 2011, at 9:35 p.m., he had been holding his urine since 9:20 p.m. and asked Defendant Kotsch if he could use the restroom. Defendant Kotsch denied Plaintiff's request. Plaintiff began to jump around and hold his genitals in an attempt to stop from urinating himself and, at approximately 9:45 p.m., Plaintiff called out to Defendant Kotsch, requesting permission to go to the restroom. Defendant Kotsch denied Plaintiff's request, stating that count was almost completed. Plaintiff then felt urine trickling down his legs and ran to the restroom, emptying his bladder.

Plaintiff washed his hands and then went to Defendant Kotsch and told her that she had made him urinate on himself. Defendant Kotsch responded that she was writing a misconduct on Plaintiff for disobeying a direct order. Plaintiff told Defendant Kotsch that she should include the fact that she had made Plaintiff urinate on himself in the report. Plaintiff showed Defendant Kotsch his soiled clothing, but she refused to look and walked away. Plaintiff then mopped the urine off the floor, took a shower and cleaned himself up, and telephoned his sister, who called the facility and told the shift commander what had occurred.

On October 29, 2011, Sergeant S. McLean reviewed Plaintiff on the misconduct. Sergeant McLean stated that Defendant Kotsch had been following the rule prohibiting restroom

usage during count without an officer's permission. Sergeant McLean told Plaintiff that Defendant Kotsch never allowed restroom usage during count. Defendant Malette conducted a hearing on the misconduct ticket on October 31, 2011, during which Plaintiff requested a hearing investigation. Plaintiff asserts that although a prisoner is not entitled to an investigation by a Hearing Investigator, he is entitled to a reasonable investigation by the Hearing Officer. Defendant Malette looked at Plaintiff's investigation request, read it, and threw it on the table in front of Plaintiff, stating that she was unconcerned with the request because Plaintiff admitted that he disobeyed the direct order. Defendant Malette found Plaintiff guilty and sentenced him to seven days top lock.

Plaintiff filed an appeal to Defendant Olson, which was denied. In the denial, Defendant Olson stated that she spoke to health services and had failed to discover any reason for Plaintiff not being able to hold his urine. Plaintiff also filed a grievance, which was rejected as "non-grievable." Plaintiff's step II grievance appeal was denied by Defendant MacLaren, and his step III appeal was denied by Defendant Heyns. Plaintiff claims that Defendants violated his Eighth and Fourteenth Amendment rights and seeks compensatory and punitive damages, as well as injunctive relief.

## Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S.

at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Olson, MacLaren and Heyns were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Olson, MacLaren and Heyns had in this action involve the denial of administrative grievances or the failure to act. Defendants Olson, MacLaren and Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants Olson, MacLaren and Heyns are properly dismissed for lack of personal involvement.

Plaintiff claims that refusing to allow him to go to the bathroom during count on one occasion constituted cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In *Johnson v. McByrde*, 2:10-CV-131, 2010 WL 3059248 (W.D. Mich. Aug. 4, 2010), the court held that where an inmate was denied the use of a bathroom during count, he was required to show that the denial constituted a denial of the minimal civilized measure of life's necessities. The court noted:

> Plaintiff alleges that on September 16, 2009 he asked Defendant to use the bathroom at 4:40 p.m. during a formal count. Defendant refused stating that the count was not yet cleared. Plaintiff returned to his bunk. At 4:48 p.m. Plaintiff looked out the window and saw that the count had finished. Plaintiff alleges that the count cleared at 4:45 p.m. (Compl., PageID# 3, docket # 1.) Plaintiff states that he asked Defendant again to use the bathroom but was denied.[FN1] Plaintiff alleges that, as a result, he urinated on himself.
>
> Plaintiff was then allowed to go down the hall and to have his pants washed. He heard Defendant tell corrections officer (CO) Cook that he did not take Plaintiff to the bathroom because he believed Plaintiff could "hold it" and had given Plaintiff a ten and five minute warning before the count began.
>
> Plaintiff alleges that he has a medical problem that causes a need for frequent urination and that health care does not issue an accommodation for it. He states that he was in physical pain and sweating because of his need to urinate and that he was humiliated because he urinated on himself.

*Id.* at *1 (footnote omitted).

In *Johnson v. McByrde*, the court noted that Plaintiff was only delayed access to the toilet for eight minutes after his initial request and stated that "the fact that Defendant did not take Plaintiff to the toilet during the middle of a count at the moment that Plaintiff decided that he needed to urinate is insufficient, by itself, to state a claim under the Eighth Amendment." *Id.* at *2 (*citing Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999).

In the instant case, Plaintiff alleges that he first asked to go to the bathroom during count at 9:35 p.m., and again at 9:45 p.m., when Defendant Kotsch told him that count would be

over soon. Plaintiff then urinated on himself as he was running to the bathroom. Plaintiff fails to allege any facts showing that Defendant Kotsch was aware of his medical condition or that she had any reason to assume that Plaintiff was physically unable to control his bladder. As a result, Plaintiff urinated on himself as he was running to the bathroom. Plaintiff does not allege that Defendant Kotsch denied him access to the bathroom on any other occasion. Because Plaintiff merely asserts an isolated and temporary refusal to allow him to use the bathroom, the court concludes that Plaintiff's allegations do not rise to the level of an Eighth Amendment violation.

Finally, Plaintiff alleges that his misconduct conviction violated his due process rights. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see*

*also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). In this case, Plaintiff alleges that he was sentenced to seven days top lock. Based on *Sandin*, this sentence is not such that it imposes an atypical and significant hardship.

Furthermore, Plaintiff's complaint, as well as the attached documents, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). In this case, Plaintiff concedes that he received a hearing during which he was able to present his side of the story. Therefore, Plaintiff's due process claims are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 26, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE